318

MARTIN RINGHOFER, *Appellant*, v. LINDA K. RIDGE, *as Deputy Chief Administrative Officer of the King County Superior Court, Respondent*.

*Richard M. Stephens* (of *Groen Stephens & Klinge LLP*) (*Monique A. Miles* of *Immigration Reform Law Institute*, of counsel), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Thomas W. Kuffel, Deputy*, for respondent.

¶1 DWYER, J. — Washington state superior courts are required by statute to preliminarily determine the statutory qualification of persons summoned for jury service. Accordingly, as part of its juror summons mailing, King County Superior Court requests that persons summoned indicate whether they are disqualified from jury service based upon one or more of the statutory disqualification

factors. A person who indicates that he or she does not meet the statutory qualifications is excused from appearing in response to the summons.

¶2 Martin Ringhofer sought from the superior court access to this juror disqualification information, including the name and address of each disqualified person and the reason indicated for disqualification. Ringhofer sought this information in order to cross-check the list of disqualified persons against voter registration records, as the statutory qualifications for jury service overlap with voter registration requirements. By so doing, he sought to determine whether individuals unqualified to vote are nevertheless registered to do so. Linda Ridge, deputy chief administrative officer of the superior court, denied Ringhofer's request. Ringhofer then filed a complaint in the superior court seeking an order requiring the disclosure of the juror disqualification information. The trial court dismissed his complaint on summary judgment.

¶3 Ringhofer asserts on appeal that both General Rule (GR) 31 and article I, section 10 of the Washington State Constitution require disclosure of the requested information. However, RCW 2.36.072(4) restricts the use of the juror disqualification information to that of the superior court in preliminarily determining qualification for jury service of persons summoned. Accordingly, only if this statute is determined to be unconstitutional can the information be used for any other purpose. Because Ringhofer has not shown that RCW 2.36.072(4) contravenes the public's article I, section 10 right to open courts, we hold that he is not entitled to access the juror disqualification information. Thus, we affirm.

I

¶4 On October 16, 2010, Ringhofer requested from King County Superior Court a list of persons disqualified from jury service in that county during 2008 and 2009 based upon the statutory qualifications set forth in RCW 2.36-

.070.[1] Specifically, he requested the name and address of each summoned person who had indicated that he or she was not qualified for jury service, as well as "the individual's stated reasons for self-disqualification." According to his request, Ringhofer sought this "non-juror information," as he referred to it, due to his concern "about unauthorized individuals influencing statewide elections." Ringhofer stated that he wanted to use this information to "educate the public on voting enforcement issues." He continued:

> Disclosure of the information is in the public interest because it will significantly contribute to public understanding of the operations and activities of the government, in regards to voter enforcement. The data should be released to promote government transparency, so that it can be use [sic] to educate the public about the real concern of unauthorized voting.

¶5 Ridge responded to Ringhofer, denying his request. Ridge advised Ringhofer that GR 18(d)[2] and RCW 2.36.072[3]

---

[1] RCW 2.36.070 provides:

A person shall be competent to serve as a juror in the state of Washington unless that person:
 (1) Is less than eighteen years of age;
 (2) Is not a citizen of the United States;
 (3) Is not a resident of the county in which he or she has been summoned to serve;
 (4) Is not able to communicate in the English language; or
 (5) Has been convicted of a felony and has not had his or her civil rights restored.

[2] GR 18(d) provides:

Each court, after consultation with the county auditor and county clerk of its jurisdiction, shall establish a means to preliminarily determine by written declaration signed under penalty of perjury by each person summoned, the qualifications set forth in RCW 2.36.070 of each person summoned for jury duty prior to the person's appearance at the court to which the person is summoned to serve. *Information so provided to the court for preliminary determination of qualification for jury duty may only be used for the term such person is summoned and may not be used for any other purpose. Provided,* that the court, or its designee, may report a change of address or nondelivery of summons of persons summoned for jury duty to the county auditor.
(Emphasis added.)

[3] Like GR 18(d), RCW 2.36.072(4) requires that the

[i]nformation provided to the court for preliminary determination of statutory qualification for jury duty may only be used for the term such person is

restrict the use of the requested information. She informed him that, for this reason, "the court is unable to provide you with the individualized names, addresses, and associated reasons for disqualification or excuse from service."

¶6 On November 30, 2010, Ringhofer filed a "Petition for Writ of Mandate[,] Complaint for Declaratory Relief and Petition under GR 31" against Ridge. Noting that "[d]is-qualification from jury duty overlaps to some degree with disqualification from the right to vote," Ringhofer asserted that he had determined that, in other counties, "significant numbers of disqualified voters nevertheless were registered to vote."[4] Thus, Ringhofer explained, he sought the "non-juror information" in order to "cross-check non-juror names" with the county's voter registration list in order to determine the number of eligible persons who are not qualified to vote but who are, nevertheless, registered to vote in King County. Ringhofer asserted that he sought "access to the court's records in the interest of ensuring government and judicial transparency, as well as the integrity of the juror selection and voter registration processes." He sought an order compelling the superior court to disclose the requested information and a declaration that he was legally entitled to access these "court records."

¶7 Both Ridge and Ringhofer thereafter moved for summary judgment. Ridge sought dismissal of Ringhofer's complaint, asserting that GR 18(d) and RCW 2.36.072(4) precluded Ringhofer's proposed receipt and use of the requested

---

summoned and may not be used for any other purpose, except that the court, or designee, may report a change of address or nondelivery of summons of persons summoned for jury duty to the county auditor.

[4] Ringhofer stated in his complaint that Douglas County Prosecutor Steve M. Clem and Pacific County Clerk Virginia Leech provided him with the requested juror disqualification information for those counties. Based upon the discussion at oral argument in this court, it appears that no notice was given to those persons whose information was disclosed. Although we question the propriety of such disclosure, particularly without notice, we are not called upon to address that question here.

information. She additionally contended that article I, section 10 of our state constitution[5] did not compel disclosure. Conversely, Ringhofer asserted that "the constitutional and common law right of the public to access court records" mandated disclosure of the juror disqualification information. On May 12, 2011, the trial court issued an order granting Ridge's motion for summary judgment and denying Ringhofer's motion for summary judgment, thus dismissing Ringhofer's complaint.

¶8 Ringhofer appeals.

## II

 ¶9 Ringhofer asserts on appeal that GR 31[6] and article I, section 10 of our state constitution require disclosure of the juror disqualification information. He contends that such information constitutes a "court record" pursuant to GR 31 and, thus, is required to be accessible to the public. However, our legislature has determined that the juror disqualification information sought by Ringhofer may be used only by the courts in preliminarily determining the eligibility for jury service of those persons summoned for such service. Accordingly, unless Ringhofer demonstrates that this statute is constitutionally infirm, the trial court correctly determined that Ringhofer is not entitled to such information.

¶10 The relevant statute requires that the trial courts in our state "establish a means to preliminarily determine by a written or electronic declaration signed under penalty of perjury by the person summoned," the qualifications for jury service set forth in RCW 2.36.070. RCW 2.36.072(1).

---

[5] "Justice in all cases shall be administered openly, and without unnecessary delay." WASH. CONST. art. I, § 10.

[6] GR 31 provides for public access to court records, as defined by that rule. *See* GR 31(c)(4) (defining "court record"). Specifically, it states that "[t]he public shall have access to all court records except as restricted by federal law, state law, court rule, court order, or case law." GR 31(d)(1).

Accordingly, King County Superior Court includes with its juror summons mailing a "Juror Qualification Form," requesting that each person summoned certify under penalty of perjury whether he or she is qualified to serve. The form requires the person summoned to indicate which, if any, of the statutory qualifications the person does not meet. "Upon receipt by the summoning court of a written declaration stating that a declarant does not meet the qualifications set forth in RCW 2.36.070, that declarant shall be excused from appearing in response to the summons." RCW 2.36.072(4).

¶11 In addition to requiring that state courts preliminarily determine prospective juror eligibility, RCW 2.36.072(4) restricts the use of the juror disqualification information received by the courts from those persons summoned. *See also* GR 18(d). Such information "may only be used for the term such person is summoned and *may not be used for any other purpose*, except that the court, or designee, may report a change of address or nondelivery of summons of persons summoned for jury duty to the county auditor." RCW 2.36.072(4) (emphasis added); *see also* GR 18(d). Because the language of the statute is unambiguous, we need not engage in statutory interpretation; rather, we derive the statute's meaning from its plain language. *Johnson v. Recreational Equip., Inc.*, 159 Wn. App. 939, 946, 247 P.3d 18, *review denied*, 172 Wn.2d 1007 (2011). The plain language of RCW 2.36.072(4) clearly indicates that our legislature intended to limit the use of juror disqualification information to preliminarily determining whether persons summoned for jury service meet the statutory qualifications for serving. This necessarily precludes the use of that information for any other purpose.[7] Accordingly, the statute

---

[7] We need not address Ringhofer's contention that the juror disqualification information constitutes a "court record" pursuant to GR 31(c)(4) and, thus, is required to be made accessible to the public. The rule provides that "[t]he public shall have access to all court records *except as restricted by* federal law, *state law*, court rule, court order, or case law." GR 31(d)(1) (emphasis added). RCW 2.36-.072(4) clearly restricts public access to the juror disqualification information.

precludes the use of the juror disqualification information by Ringhofer for his professed—or any other—purpose.

¶12 Ringhofer additionally asserts, however, that article I, section 10 mandates disclosure of the juror disqualification information. Were this so, RCW 2.36.072(4), in precluding the use of that information for any purpose other than preliminary determination of juror eligibility by the court, would violate our state constitution and could not be applied to deny Ringhofer's request for disclosure of the juror disqualification information. Thus, we must determine whether the public's constitutional right to open courts is implicated here.

¶13 Article I, section 10 of the Washington State Constitution provides that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." "This mandate 'guarantees the public and the press a right of access to judicial proceedings and court documents in both civil and criminal cases.'" *Hundtofte v. Encarnación*, 169 Wn. App. 498, 506-07, 280 P.3d 513 (2012) (quoting *Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004)), *petition for review filed*, No. 88036-1 (Wash. Oct. 29, 2012). However, "not every occurrence or event related to court proceedings falls within the access to the courts provision." *Tacoma News, Inc. v. Cayce*, 172 Wn.2d 58, 66, 256 P.3d 1179 (2011).

¶14 Rather, Washington courts have determined that, when the core concern of article I, section 10 is not implicated, our constitution does not mandate public access to the requested court documents. *Cayce*, 172 Wn.2d at 66-72; *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 548-50, 114 P.3d 1182 (2005); *Dreiling*, 151 Wn.2d at 908-10; *Bennett v. Smith Bunday Berman Britton, PS*, 156 Wn. App. 293, 304-08, 234 P.3d 236 (2010), *review granted*, 170 Wn.2d 1020 (2011). This "core concern," we recently held, "is to guarantee the public's right to observe 'the operations of the courts and the judicial conduct of judges.'" *Bennett*, 156 Wn. App. at 306 (quoting *Dreiling*, 151 Wn.2d at 908). Indeed, our Supreme Court has determined that, where "informa-

tion does not become part of the court's decision-making process, article I, section 10 does not speak to its disclosure." *Dreiling*, 151 Wn.2d at 912, 910 (noting that "mere discovery" does not implicate the open courts provision).

¶15 Applying this rule, our Supreme Court in *Cayce* denied to the public access to the deposition of a material witness in a criminal trial. 172 Wn.2d at 60-61. The deposition, taken to preserve the witness's testimony, was never used in connection with the trial; nor was it submitted in connection with any motion. *Cayce*, 172 Wn.2d at 62, 70. The Supreme Court noted that it had previously "distinguished 'mere discovery' from documents obtained through discovery that are filed with a court in anticipation of a court decision." *Cayce*, 172 Wn.2d at 67. Because, there, the deposition was neither filed with the court nor used during trial, the court determined that article I, section 10 was not applicable and, thus, disclosure of the deposition was not constitutionally required. *Cayce*, 172 Wn.2d at 66-71. The court held that, "unless the depositions become part of the judicial decision making process, as we have recognized, article I, section 10 has no application." *Cayce*, 172 Wn.2d at 71.

¶16 Here, we do not address the application of article I, section 10 to depositions. Nevertheless, our Supreme Court's holding in *Cayce* is of consequence. There, the court determined that, because the purpose of the open courts provision—to ensure the public's trust and confidence in our judicial system—was not implicated, the public was not entitled to disclosure of the deposition. *Cayce*, 172 Wn.2d at 67, 71. Here, the juror disqualification information requested by Ringhofer is even further attenuated from the core concern of article I, section 10. The juror disqualification information does not come before the court as part of a judicial proceeding; rather, the information is solely used to preliminarily determine the eligibility of summoned persons to serve on a future jury. Such information does not implicate "the public's right to observe 'the operations of the

courts and the judicial conduct of judges.' " *Bennett*, 156 Wn. App. at 306 (quoting *Dreiling*, 151 Wn.2d at 908). Accordingly, article I, section 10 does not mandate its disclosure.

¶17 Statutes are presumed to be constitutional, and "[t]he challenger bears the burden of showing the statute is unconstitutional beyond a reasonable doubt." *City of Bothell v. Barnhart*, 172 Wn.2d 223, 229, 257 P.3d 648 (2011). Here, Ringhofer must demonstrate that RCW 2.36.072(4), which precludes public access to the juror disqualification information that he seeks, violates our state's constitutional guaranty to open courts. Because the information sought by Ringhofer does not implicate the purpose of article I, section 10, he cannot do so. Accordingly, the trial court properly dismissed Ringhofer's complaint seeking an order requiring disclosure of the juror disqualification information.[8]

¶18 Affirmed.

GROSSE and BECKER, JJ., concur.

Review denied at 177 Wn.2d 1009 (2013).

---

[8] Ringhofer additionally asserts that both the First Amendment to the United States Constitution and the common law mandate disclosure of the juror disqualification information. However, as with the right provided by article I, section 10, the First Amendment right to open judicial proceedings "is not all inclusive." *Cayce*, 172 Wn.2d at 72. Moreover, the First Amendment cases to which Ringhofer cites are inapposite. No First Amendment claim is properly stated herein.

Additionally, our state is governed by the common law only to the extent that the common law is not inconsistent with state law. *Potter v. Wash. State Patrol*, 165 Wn.2d 67, 76, 196 P.3d 691 (2008). "The legislature has the power to supersede, abrogate, or modify the common law." *Potter*, 165 Wn.2d at 76; *see also State v. Mays*, 57 Wash. 540, 542-43, 107 P. 363 (1910) (stating that "the common law prevails in this state except as modified by statute"). Here, even if the common law did require disclosure of the juror disqualification information, RCW 2.36.072(4) unarguably supersedes any such requirement. Accordingly, we determine that neither the First Amendment nor the common law was violated by the superior court's denial of Ringhofer's request.